IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JIMMY E. THOMPSON, # B-34484, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 13-617-GPM |
| ) | |
| S. A. GODINEZ, MARC HODGE, ) | |
| MARY HARDY, PHILLIP MARTIN, ) | |
| JAMES FENOGLIO, TONY KITTLE, ) | |
| LORI CUNNINGHAM, ) | |
| DR. JOHN DOE MATTICKS, ) | |
| DR. JOHN DOE SHAH, ) | |
| WEXFORD HEALTH SOURCE, INC., ) | |
| BRANDON RISSE, SARAH JOHNSON, ) | |
| TERRI ANDERSON, and ) | |
| SHERRY BENTON, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

**MURPHY, District Judge:**

Plaintiff Jimmy E. Thompson, an inmate currently incarcerated at Lawrence Correctional Center ("Lawrence"), brings this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff is serving a 30-year sentence for armed robbery. Plaintiff claims that during his incarceration at Lawrence, Defendants failed to treat his back injury and forehead lipoma. He raises an Eighth Amendment claim against Defendants for deliberate indifference to his medical needs and a Fourteenth Amendment claim for violation of his rights to due process and equal protection. Plaintiff seeks compensatory and punitive damages, as well as a preliminary and permanent injunction.

This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A. Under § 1915A, the Court is required to promptly screen prisoner

complaints to filter out nonmeritorious claims. 28 U.S.C. § 1915A(a). The Court is required to dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

**The Complaint**

The events giving rise to Plaintiff's complaint occurred at Lawrence between August 2011 and June 2013 (Doc. 1, pp. 14-25). Plaintiff alleges that during this time, Defendants failed to properly treat a back injury he sustained during an assault in 2011 and a lipoma he developed on his forehead in 2007. Plaintiff's claims are separately summarized below.

### Back Injury

Plaintiff sustained a back injury on August 26, 2011, when another prisoner slammed him onto concrete in the prison yard (Doc. 1, p. 14). The same day, a security officer[1] took Plaintiff to Lawrence's Health Care Unit ("HCU"), where he was examined. After returning to his cell, Plaintiff's back and hip pain increased. The following day, he complained about his injury to a nurse, who was administering medication to inmates and told Plaintiff that she "would see what she can do."

Although Plaintiff did not hear back from this nurse, Plaintiff saw other nurses, who offered him pain medication on the following dates: (1) a 30-pack of Tylenol (325 mg) on August 31st; (2) a 30-pack of Ibuprofen (200 mg) on September 2nd; (3) a 30-pack of Ibuprofen (200 mg) on September 24th; and (4) a 30-pack of Ibuprofen (200 mg) on September 30th. Plaintiff refused this last offer because he wanted "stronger pain pills at least 400 mg." He reiterated his request for "stronger pills" at an appointment on October 4th.

---

[1] Officer Gindar, the security officer who took Plaintiff to the HCU, allegedly observed the assault from a prison watch tower without intervening. Plaintiff did not name Officer Gindar as a defendant in this action or raise any claims against him.

In addition to treating Plaintiff's back injury with pain medication, Plaintiff was referred for an x-ray on September 6th. He received the x-ray two days later. On October 6th, Defendants Martin (HCU administrator) and Hardy (nurse practitioner) told Plaintiff that his x-ray was negative. Plaintiff did not believe them. He requested "indefinite pain pills," a back brace, and special shoes (Doc. 1, p. 15). Defendants Martin and Hardy provided Plaintiff with a 30-pack of Motrin (400 mg). Plaintiff resorted to filing grievances.

Plaintiff saw Defendant Fenoglio for the first time on February 1, 2012 (Doc. 1, p. 16). Defendant Fenoglio ordered a second back x-ray and physical therapy. He also agreed to give Plaintiff "something for pain." On February 22nd, Plaintiff learned that the second x-ray showed arthritis and a crook in his spine. Plaintiff received a 90-day supply of Naproxin (500 mg). He also attended nine 2-hour physical therapy sessions between March 21st and April 18th (Doc. 1, p. 17). Defendant Fenoglio repeatedly refused Plaintiff's requests for an indefinite supply of pain pills, a back brace, and special shoes (Doc. 1, p. 16). Plaintiff filed grievances.

When Defendant Fenoglio again saw Plaintiff on September 4th, he prescribed Plaintiff a 90-day supply of Ultran pain pills, to be taken twice daily. However, Defendant Fenoglio still refused Plaintiff's request for a back brace, ace bandage, and special shoes. Defendant Matticks also refused these requests on October 12th, explaining that a back brace could exacerbate Plaintiff's pain. Instead, Plaintiff was referred to a therapist, who met with Plaintiff on October 17th and taught him back exercises. On December 7th, Plaintiff saw Defendant Shah, who also prescribed exercises.

On March 30, 2013, a nurse gave Plaintiff a 30-pack of Ibuprofen (200 mg) for his chronic back pain and scheduled an appointment with a doctor (Doc. 1, p. 21). The doctor, who is not named as a defendant in this action, supplied Plaintiff with a 30-pack of Tylenol (325 mg)

after meeting with him on April 14th, but denied his request for analgesic cream.  On April 29th, Plaintiff again saw Defendant Hardy, who said that she did not need to see him anymore.  Plaintiff saw another nurse on May 9th, who set up a doctor's appointment for Plaintiff.  The doctor, who is not named as a defendant, met with Plaintiff and provided him with a 30-pack of Ibuprofen (400 mg) and a 30-day prescription for arthritis pills.  Plaintiff learned on May 29, 2013, that the Ibuprofen was intended to address his arthritis, and he would not receive a separate prescription for arthritis medication (Doc. 1, p. 22).

Plaintiff received a third back x-ray on May 15th.  Still another doctor, who is also not named as a defendant, prescribed Plaintiff Utran pain pills twice daily beginning on June 5th (Doc. 1, p. 23).  Plaintiff's pain immediately diminished.

Even though Plaintiff now feels better, he suffers from chronic back pain and depression as a result of inadequate treatment.  He seeks back surgery and an indefinite supply of pain pills.  He also seeks a back brace and special shoes.

**Lipoma**

With regard to the lipoma, Plaintiff alleges that he developed a cyst on his forehead in 2007 (Doc. 1, p. 14).  The lipoma grew larger (Doc. 1, p. 16).  Defendant Martin sent Plaintiff a memorandum on December 14, 2011, and January 11, 2012, stating that there is no medical indication for surgical removal of the lipoma (Doc. 1, p. 19).  Even so, Plaintiff asked Defendant Fenoglio to test and surgically remove the lipoma on February 1st, February 22nd, and September 4th, 2012 (Doc. 1, p. 16).  Defendant Fenoglio refused (Doc. 1, pp. 16-17).  Plaintiff also told Defendant Fenoglio on September 4th that he sometimes suffers from dizziness and feels faintish (Doc. 1, p. 17).  On September 28th, Defendant Fenoglio measured Plaintiff's lipoma.  On October 12th, Defendant Matticks did the same.  On December 23rd, Plaintiff met

with a third doctor about his lipoma (Doc. 1, p. 18).  Plaintiff now seeks testing, x-ray, and surgical removal of his lipoma.

With regard to both medical conditions, Plaintiff now raises an Eighth Amendment claim against Defendants for displaying deliberate indifference to his medical needs (Doc. 1, p. 24). Plaintiff also raises a Fourteenth Amendment claim against Defendants for violating his due process and equal protection rights (Doc. 1, p. 25).  In addition to monetary damages, Plaintiff seeks injunctive relief (Doc. 1, p. 33).

## DISCUSSION

The Court finds it convenient to divide the complaint into four counts.  The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court.

**Count 1:**  Eighth Amendment claim against Defendants for deliberate indifference to his back injury.

**Count 2:**  Eighth Amendment claim against Defendants for deliberate indifference to his lipoma.

**Count 3:**  Fourteenth Amendment claim against Defendants for violation of his right to receive due process of law.

**Count 4:**  Fourteenth Amendment claim against Defendants for violation of his right to equal protection under the law.

### Count 1 – Deliberate Indifference to Back Injury

Accepting Plaintiff's allegations as true, the Court finds that Plaintiff has failed to articulate a colorable Eighth Amendment claim against Defendants for inadequate treatment of his back injury.  Prison officials violate the Eighth Amendment's proscription against cruel and

unusual punishment when their conduct demonstrates "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The standard set forth in *Estelle* includes both an objective and a subjective component. *Gutierrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997).

To satisfy the objective component, Plaintiff must demonstrate that he is suffering from an "objectively, sufficiently serious" medical condition. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotations omitted); *see also Henderson v. Sheahan*, 196 F.3d 839, 845 (7th Cir. 1999). As the Seventh Circuit has made clear, "[a] 'serious' medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Gutierrez*, 111 F.3d at 1371.

Once Plaintiff satisfies the objective component of this test, he must still satisfy the subjective prong of this inquiry by demonstrating that Defendants displayed deliberate indifference to his medical condition. Deliberate indifference is equivalent to reckless or intentional conduct. *Jackson v. Illinois Medi-Car, Inc.*, 300 F.3d 760, 765 (7th Cir. 2002). At a minimum it requires that a prison official "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and that the prison official actually drew the inference. *Brennan*, 511 U.S. at 837.

Even if the Court assumes[2] that Plaintiff's medical condition following the assault was serious, Plaintiff still fails to state a cognizable Eighth Amendment claim against Defendants. Plaintiff indicates in the complaint that he was taken to HCU for an examination immediately following the incident. For almost two years after the assault, Plaintiff saw numerous health care providers--including prison doctors, nurses, and physical therapists--promptly and regularly in

---

[2] For purposes of this Order, it is not necessary to determine whether Plaintiff's back injury was a serious medical condition. Plaintiff clearly fails to demonstrate that Defendants displayed deliberate indifference to his medical needs, and his claim fails on that basis.

response to his requests for treatment. He received a steady flow of pain medication, the strength of which was adjusted upward in response to his complaints of pain. Plaintiff refused some of this pain medication. In addition, Plaintiff's back was x-rayed three times, including one x-ray taken soon after the assault and one x-ray taken just before he filed this lawsuit. Plaintiff has completed a course of physical therapy, including nine 2-hour sessions. He has received training on back exercises by multiple health care providers. Plaintiff alleges in the complaint that he now feels better.

Although Plaintiff's requests for some forms of treatment (i.e., an indefinite supply of pain medication, a back brace, and special shoes) were denied, these denials do not suggest that any of the defendants acted with deliberate indifference. It is well-established that the mere disagreement with a physician's chosen course of treatment does not amount to deliberate indifference under the Eighth Amendment. *See Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003); *Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001) (courts will not takes sides in disagreements about medical personnel's judgments or techniques); *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996). The Eighth Amendment does not give prisoners entitlement to "demand specific care" or "the best care possible," but only requires "reasonable measures to meet a substantial risk of serious harm." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Further, a difference of opinion between medical professionals concerning the treatment of an inmate will not support a claim for deliberate indifference. *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006); *see also Garvin*, 236 F.3d at 898.

In this case, Plaintiff has been treated regularly, repeatedly, and promptly by a team of health care providers. These providers have offered him a variety of treatment options tailored to his specific complaints. They have not persisted in an ineffective course of treatment; rather, the

defendants have tried a number of treatment options on Plaintiff, who now alleges that he feels better.  Under the circumstances, Plaintiff falls far short of stating an Eighth Amendment claim against Defendants for deliberate indifference to his back injury.  Accordingly, Plaintiff's Eighth Amendment claim against Defendants for deliberate indifference to his back injury shall be dismissed with prejudice.

**Count 2 – Deliberate Indifference to Lipoma**

Plaintiff has also failed to state an actionable Eighth Amendment claim against Defendants for failure to adequately treat his lipoma.  The legal standard for stating an Eighth Amendment claim is set forth above.  Even if the Court assumes without deciding that Plaintiff's lipoma constitutes a serious medical need, the claim still fails.

This is because Plaintiff's complaint does not suggest that any defendant responded to his request for treatment of the lipoma with deliberate indifference.  Deliberate indifference is equivalent to reckless or intentional conduct.  *Jackson*, 300 F.3d at 765.  At a minimum it requires that a prison official "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and that the prison official actually drew the inference. *Brennan*, 511 U.S. at 837.

Plaintiff alleges that the HCU Administrator, Defendant Martin, informed Plaintiff in writing *twice* in less than a month (i.e., December 14, 2011, and January 11, 2012) that there was no medical indication for surgery on his lipoma (Doc. 1, p. 19).  The fact that his requests for testing and surgical removal of the lipoma one month later were denied is no surprise, given Defendant Martin's earlier written statements (Doc. 1, p. 16).  In response to Plaintiff's continued complaints, Defendant Fenoglio met with him repeatedly and examined the lipoma (Doc. 1, p. 17).  Plaintiff received a second opinion from Defendant Matticks on October 12th.

Plaintiff received a third opinion on December 23rd (Doc. 1, p. 18). The fact that Plaintiff's health care providers disagree with his preferred treatment method does not suggest that Defendants were deliberately indifferent to his medical need. Accordingly, Plaintiff's Eighth Amendment claim against Defendants for deliberate indifference to his lipoma shall be dismissed with prejudice.

**Count 3 – Due Process Claim**

Plaintiff has also failed to articulate a Fourteenth Amendment due process claim against Defendants. This claim appears to arise from the responses Plaintiff received to his numerous grievances. The fact that a counselor, grievance officer, or even a supervisor received a complaint about the actions of another individual does not create liability. In order to be held individually liable, a defendant must be "personally responsible for the deprivation of a constitutional right." *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001)). *See also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). As explained above, Plaintiff has not established that any of the defendants violated his constitutional rights.

Further, "a state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause." *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). Thus, Plaintiff has no claim against Defendants, merely because they did not adequately respond to his grievances and complaints about the lack of treatment for his medical needs.

Moreover, if a prisoner is under the care of prison medical professionals, non-medical prison officials "will generally be justified in believing that the prisoner is in capable hands." *Arnett v. Webster*, 658 F.3d 742, 755 (7th Cir. 2011) (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004)). "A layperson's failure to tell the medical staff how to do its job cannot be called

deliberate indifference; it is just a form of failing to provide a gratuitous rescue service." *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009). For these reasons, Plaintiff fails to state a cognizable Fourteenth Amendment due process claim against Defendants, and this claim shall be dismissed with prejudice.

**Count 4 – Equal Protection Claim**

Finally, Plaintiff's equal protection claim also fails. A "prison administrative decision may give rise to an equal protection claim only if Plaintiff can establish that 'state officials had purposefully and intentionally discriminated against him.'" *Meriwether v. Faulkner*, 821 F.2d 408, 415 n.7 (7th Cir.), *cert. denied*, 484 U.S. 935 (1987) (citing *Shango v. Jurich,* 681 F.2d 1091, 1104 (7th Cir. 1982)). Plaintiff's allegations in support of this claim are vague and conclusory. Beyond alleging that Defendants discriminated against him, Plaintiff does not explain this claim. Under the circumstances, he has not pled "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Accordingly, Plaintiff's Fourteenth Amendment equal protection claim against Defendants fails and shall be dismissed with prejudice.

**PENDING MOTIONS**

Plaintiff's motion to appoint counsel (Doc. 2) shall be **DENIED**.

Plaintiff's motion for service of process at government expense (Doc. 4) shall also be **DENIED**.

**DISPOSITION**

**COUNTS 1, 2, 3,** and **4** are **DISMISSED** with prejudice from this action for failure to state a claim upon which relief can be granted.

**DEFENDANTS GODINEZ, HODGE, HARDY, MARTIN, FENOGLIO,**

**CUNNINGHAM, MATTICKS, SHAH, WEXFORD HEALTH SOURCE, INC., RISSE, KITTLE, JOHNSON, ANDERSON,** and **BENTON** are dismissed with prejudice from this action.

Plaintiff is **ADVISED** that this dismissal shall count as one of his allotted "strikes" under the provisions of 28 U.S.C. § 1915(g).  A dismissal without prejudice may count as a strike, so long as the dismissal is made because the action is frivolous, malicious, or fails to state a claim. *See Paul v. Marberry*, 658 F.3d 702, 704 (7th Cir. 2011); *Evans v. Ill. Dep't of Corr.* 150 F.3d 810, 811 (7th Cir. 1998).

Plaintiff's obligation to pay the filing fee for this action was incurred at the time the action was filed, thus the filing fee of $350.00 remains due and payable.  *See* 28 U.S.C. § 1915(b)(1); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998).

The Clerk shall **CLOSE THIS CASE** and enter judgment accordingly.

**IT IS SO ORDERED.**

DATED:  August 22, 2013

s/ *G. Patrick Murphy*
G. PATRICK MURPHY
United States District Judge